IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARY KELLS,

       Plaintiff,

v.                                   Case No. 6:14-CV-1002-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

       Defendant.

## MEMORANDUM AND ORDER

Plaintiff Mary Kells seeks review of a final decision by defendant, the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). In her pleadings, plaintiff alleges error with regard to the Commissioner's decision that she is capable of performing light work. Upon review, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record. As such, the decision of the Commissioner is affirmed.

### I. Background

Plaintiff's medical issues date back to at least 2009, when she reported to Dr. Mark Neuman, D.C., complaining of neck and left shoulder pain. Dkt. 11, at 4. Over the course of her chiropractic treatment with Dr. Neuman, from June 22, 2009, to June 4, 2010, she was diagnosed with cervical strain, lumbar strain, shoulder pain, and limited range of motion. Dkt. 11, at 4. Dr. Neuman's notes from January 21, 2010, report that

plaintiff "responds to manual manipulation to correct misalignments and restore range of motion." Dkt. 10, at 315.

Plaintiff reported to Dr. Jeremy Roderick, D.O., on March 1, 2010, for care related to diabetes and hypertension. Dkt. 10, at 320. She returned to Dr. Roderick on April 9, 2010, for follow-up, and again on May 28, 2010, to discuss depression, shoulder pain, and hip pain that she said worsens when she rides her boyfriend's motorcycle. Dkt. 10, at 317-18. Dr. Roderick's records from May 28, 2010, assessed plaintiff with myalgias, depression, and osteoarthritis but did not order an orthopedic evaluation. Dkt. 10, at 317. On August 17, 2010, MRI testing revealed a small amount of fluid in both hip joint spaces but otherwise normal findings with no evidence of bone edema, trapping of the sciatic nerve, or muscular abnormalities. Dkt. 10, at 351.

On August 26, 2010, plaintiff was examined by George W. Stern, Ph.D., on behalf of Disability Determination Services. Dr. Stern noted insufficient evidence to make a medical determination as to Plaintiff's mental health. Dkt. 10, at 359. Plaintiff returned to Dr. Roderick on September 13, 2010, and received a Kenalog injection in her right knee following x-ray results that were "essentially normal with osteoarthritis noted in the left medial joint." Dkt. 10, at 375. The same visit noted normal lung function without wheezes or rales rhonchi. Dkt. 10, at 375.

On December 29, 2010, plaintiff was examined by Michael H. Schwartz, Ph.D., on behalf of Disability Determination Services. Dkt. 10, at 383-85. Schwartz concluded that plaintiff's depression was controlled with medication and that she had no severe

problems with cognition, memory, or emotions which would prevent her from working. Dkt. 10, at 384-85.

On February 15, 2011, Dr. James P. Cole, M.D., performed a Physical Residual Functional Capacity Assessment and opined that plaintiff had no exertional limitations, could never climb ropes, could occasionally climb ladders or scaffolds, had limited reach in all directions, and had no visual, communicative, or environmental limitations. Dkt. 10, at 386-91.

On March 22, 2011, Darrell Snyder, Ph.D., completed a Psychiatric Review Technique of plaintiff on behalf of Disability Determination Services. Dkt. 10, at 399. Dr. Snyder opined moderate limitations resulting from major depression and dysthymia with pain.

On November 22, 2011, Dr. Roderick completed a Medical Source Statement—Physical ("MSSP") and a Medical Source Statement—Mental ("MSSM") related to plaintiff's claim. Dkt. 10, at 426-28, 435-37. Dr. Roderick's MSSP opined that plaintiff could frequently lift or carry up to five pounds, occasionally lift or carry up to ten pounds, stand or walk continuously for thirty minutes, stand or walk for three hours throughout an eight-hour day, sit continuously for thirty minutes, sit for four hours throughout an eight-hour day, and was limited in push and/or pull by pain in her shoulders. Dkt. 10, at 436. Dr. Roderick's MSSP also opined that plaintiff could never climb, balance, stoop, kneel, crouch, or crawl; could occasionally reach, handle, see with far acuity, and see with depth perception; and could frequently finger, feel, see with near acuity, speak, and hear. Dkt. 10, at 437. Dr. Roderick also opined that plaintiff

should avoid any exposure to extreme cold, extreme heat, weather, wetness or humidity, dust, or fumes, and should avoid moderate exposure to vibration, hazards, and heights. Dkt. 10, at 437. Dr. Roderick concluded his MSSP by noting that plaintiff suffered from pain that would require her to lie down during an eight-hour work day and that she "is using occasional narcotics which would impair [her] judgment." Dkt. 10, at 437. Dr. Roderick's MSSM opined marked limitations on plaintiff's ability to perform activities within a schedule, be punctual, regularly attend work, and complete a workday and workweek without interruption from psychological symptoms. Dkt. 10, at 427-28. Dr. Roderick also opined moderate limitations in plaintiff's ability to concentrate, sustain a routine, work with others without being distracted by them, interact appropriately in public, accept instruction and criticism from supervisors, get along with co-workers, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. Dkt. 10, at 427-28.

On January 12, 2012, plaintiff was treated by Stacy A. Geil, A.P.R.N., M.S., apparently to continue treatment for the conditions previously handled by Dr. Roderick. Dkt. 10, at 440. Geil completed a MSSP for plaintiff's claim on May 23, 2012, wherein she opined that plaintiff could frequently lift or carry less than five pounds, occasionally lift or carry up to five pounds, stand or walk continuously for one hour, stand or walk for two hours throughout an eight-hour day, sit continuously for three hours, sit for four hours throughout an eight-hour day, and was limited in push or pull "for extent of time." Dkt. 10, at 447. Geil opined limitations in plaintiff's ability to stoop,

4

kneel, crouch, or crawl, but did not indicate the extent of those limitations[1]. Dkt. 10, at 448. Geil opined that plaintiff should avoid any exposure to extreme cold and moderate exposure to wetness or humidity and vibrations; that plaintiff suffered pain that would require her to lie down for two to four hours of an eight-hour work day; and that plaintiff took medication that sometimes made her tired. Dkt. 10, at 448.

Plaintiff filed for DIB on March 25, 2010, alleging onset of disability on April 30, 2009. Dkt. 11, at 2. Plaintiff's application was denied on August 27, 2010, and again upon reconsideration on March 24, 2011. Dkt. 11, at 2. Plaintiff filed a request for hearing on April 19, 2011, and appeared via video at a hearing before an Administrative Law Judge ("ALJ") on June 13, 2012. Dkt. 10, at 16. The ALJ issued an unfavorable decision on August 23, 2012. Dkt. 10, at 16-30. The ALJ concluded that plaintiff suffered from the severe impairments of type I diabetes mellitus, rheumatoid arthritis ("RA"), osteoarthritis of the right knee, obesity, and an affective disorder diagnosed as both major depression and dysthymic disorder. Dkt. 10, at 18. The ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment, that plaintiff's residual functioning capacity ("RFC") allowed her to perform limited light work, and that she was unable to perform past relevant work. Dkt. 10, at 19, 21, 28. The ALJ specifically determined that:

> After careful consideration of the entire record, the undersigned finds that
> the claimant has the residual functional capacity to perform light work as

---

[1] In her MSSP, Geil circled the line items of stoop, kneel, crouch, and crawl but did not use the "never," "occasionally," or "frequently" boxes to indicate the frequency with which plaintiff could perform those functions. Rather, she wrote "limited" next to the circled items. Dkt. 10, at 448.

defined in 20 CFR 404.1567(b) in that the claimant can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. She can frequently push and/or pull with the upper and lower extremities. She can frequently balance, stoop, and crouch. She can occasionally kneel, crawl, and climb ramps and stairs, but must avoid climbing ladders, ropes or scaffolds. The claimant can occasionally reach overhead. She can frequently finger, handle and reach in other directions. She must avoid concentrated exposure to dangerous machinery, unprotected heights, cold temperature extremes and vibration. The claimant can perform simple, routine, repetitive tasks that are not performed in a fast-paced production environment or as an integral part of a team.

Dkt. 10, at 21. The ALJ further concluded that plaintiff was not disabled because, considering her age, education, work experience, and RFC, she can perform jobs that exist in significant numbers in the national economy. Dkt. 10, at 28. Plaintiff timely filed an appeal with this court pursuant to 42 U.S.C. § 405(g). Dkt. 1.

## II. Legal Standard

This court reviews the ALJ's decision under 42 U.S.C. § 405(g) to "determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (citation omitted). "Substantial evidence requires more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (citation omitted). The court's role is not to "reweigh the evidence or substitute its judgment for the Commissioner's." *Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008). The

possibility that two inconsistent conclusions may be drawn from the evidence does not preclude a finding that the Commissioner's decision was based on substantial evidence. *Zolantski*, 372 F.3d at 1200.

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has prescribed a five-step sequential analysis to determine whether disability existed between the time of claimed onset and the date the claimant was last insured under the Act. *Wilson*, 602 F.3d at 1139; 20 C.F.R. § 404.1520(a)(4). If the trier of fact finds at any point during the five steps that the claimant is disabled or not disabled, the analysis stops. *Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). The first three steps require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe or combination of severe impairments; and (3) whether the severity of those impairments meets or equals a listed impairment. *Wilson*, 602 F.3d at 1139 (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007)). If the impairments do not meet or equal a designated listing in step three, the Commissioner then assesses the claimant's RFC based on all medical and other evidence in the record. 20 C.F.R. § 404.1520(e). RFC is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. The Commissioner then proceeds to step four, where the RFC assessment is used to determine whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(e); *Lax*, 489 F.3d at 1084. The claimant bears the burden in steps one through four of proving disability that prevents performance of her past relevant work. *Lax*, 489 F.3d at 1084; 42 U.S.C. § 423(d)(5)(A).

If a claimant meets the burdens of steps one through four, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education, and work experience." *Lax*, 489 F.3d at 1084 (brackets omitted).

### III. Analysis

Plaintiff alleges error by the ALJ because (1) the weight given to the opinions of Dr. Roderick and Geil is not supported by substantial evidence, (2) the credibility analysis of plaintiff's subjective complaints is not supported by substantial evidence, and (3) the ALJ failed to provide a sufficient narrative to demonstrate that the RFC determination was supported by substantial evidence.

*A. Weighing Opinions*

1. Weighing a Treating Physician's Opinion

The ALJ determines RFC by evaluating a claimant's impairments that are "demonstrable by medically acceptable clinical and laboratory diagnostic techniques," then weighing evidence to determine the nature and severity of those impairments. 20 C.F.R. §§ 404.1527(a), 416.927(a). Such evidence may include medical opinions, other opinions, and a claimant's subjective complaints. *Id.*; *see also Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009). Statements from physicians are considered "medical opinions" for the RFC determination. 20 C.F.R. §§ 404.1527(a), 416.927(a).

Medical opinions are weighed by evaluating all relevant factors including: (1) the length, nature, and extent of any examining or treatment relationship; (2) whether the opinion source presents supporting evidence, such as medical signs and laboratory results; (3) how well the source explains the opinion; (4) whether the opinion is consistent with the record; (5) whether the source has specialty related to the claimant's impairments; and (6) all other relevant factors of which the ALJ is aware that may bear on what weight should be given to a medical opinion. 20 C.F.R. §§ 404.1527, 416.927; *see Knight ex rel P.K. Colvin*, 756 F.3d 1171, 1176-77 (10th Cir. 2014). "[T]he ALJ must give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Knight*, 756 F.3d at 1177 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

Plaintiff argues that Dr. Roderick's opinion should have been granted greater than "little" weight, perhaps even controlling weight, because he was her treating

physician. A treating physician's statement is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting SSR 96-2p, 1996 WL 374188, at *2). If the treating physician's statement is not well-supported or is otherwise inconsistent with substantial evidence on record, then it is not entitled to controlling weight and is weighed as any other medical opinion. *Id.*

The ALJ granted Dr. Roderick's MSSP opinion little weight because it (1) opined "limitations without an associated impairment," and (2) contained internal inconsistencies. Dkt. 10, at 26. The ALJ's use of the phrase "limitations without an associated impairment" is a reasonable reference to several of the factors listed in 20 C.F.R. §§ 404.1527 and 416.927, including: whether the opinion source presents supporting evidence; how well the source explains the opinion; whether the opinion is consistent with the record; and all other relevant factors. Dkt. 10, at 26; *accord* 20 C.F.R. §§ 404.1527, 416.927. The ALJ therefore applied the correct legal standard when weighing Dr. Roderick's MSSP.

The ALJ specifically noted three "limitations without an associated impairment" in Dr. Roderick's MSSP: (1) that plaintiff can only occasionally reach and handle, but the record contains no medical evidence that plaintiff's RA limits her ability to reach other than overhead; (2) that plaintiff can only occasionally see with far acuity, but the record contains no indication of retinopathy associated with plaintiff's diabetes or of other medical impairments supporting a limitation on sight; and (3) that plaintiff must avoid

all exposure to dust and fumes, but the record does not contain medical evidence of any pulmonary impairment that would support this limitation. Dkt. 10, at 26.

The conclusion that Dr. Roderick's MSSP contains limitations without associated impairments and therefore deserves reduced weight is supported by substantial evidence in the record. The record contains no medical notations or diagnoses indicating that plaintiff can only occasionally reach and handle. Dr. Roderick's medical records for plaintiff do note in one entry that plaintiff stated she had a several year history of bilateral shoulder pain, but the record does not elaborate on or further explain that pain. The record contains no medical imaging, lab results, or diagnoses to support the reach and handle limitations. It is reasonable that the ALJ might conclude that, where arm and shoulder movement is only limited to overhead reaching, reaching and handling can be performed frequently. Dr. Roderick's medical records do not report vision limitations or provide supporting diagnoses or lab results therefore, nor does he have specialty in optometry or ophthalmology. Finally, Dr. Roderick submitted no supporting evidence that plaintiff has respiratory restrictions. Rather, his records consistently state that plaintiff's respiratory function was normal.[2] Therefore, considering all relevant factors for weighing medical opinions, it was reasonable for the ALJ to determine that Dr. Roderick's MSSP contained opinions that were poorly supported and deserved little weight.

---

[2] Dr. Roderick's records consistently report plaintiff's lung function as "clear to auscultation bilaterally without rales rhonchi or wheezes." Dkt. 10, at 317; *accord* Dkt. 10, at 319, 320, 431, 434.

The ALJ's conclusion that Dr. Roderick's MSSP is internally inconsistent is supported by substantial evidence. The ALJ determined that Dr. Roderick's opinions that plaintiff can only occasionally handle but can frequently touch and feel are inconsistent. Plaintiff suffers from RA, which affects the joints of the hand. The ALJ explained that "[h]andling is a palming activity that does not affect the joints of the hand as much as fingering." Dkt. 10, at 26. The record contains no other diagnoses or supporting evidence of impairments that would limit plaintiff's ability to handle. It is therefore reasonable for the ALJ to have concluded that Dr. Roderick was attributing plaintiff's handling limitation to RA, which would be inconsistent with the opinion that the plaintiff could frequently finger and feel. Thus, the ALJ's assignment of little weight to Dr. Roderick's MSSP is supported by substantial evidence in the record.

The ALJ further assigned little weight to Dr. Roderick's MSSM, which opined marked limitations in two of twenty areas of mental functioning and moderate limitations in nine of twenty areas. Dkt. 10, at 27. The ALJ discussed that little weight was assigned to Dr. Roderick's MSSM because he is not a mental health professional and therefore does not have specialty related to mental illness, and because Dr. Roderick failed to provide supporting evidence for or insight into Plaintiff's claimed mental limitations. Dkt. 10, at 27. The ALJ thus indicated in the decision that his weighing of Dr. Roderick's MSSM was based on substantial evidence in the record.

2. Weighing Other Opinions

Plaintiff argues that the MSSP of Geil, a treating nurse practitioner, also deserved greater than "little" weight. Nurse practitioners are not considered "acceptable medical

sources" and their opinions are therefore not "medical opinions," but are "other opinions" for determining a claimant's RFC. 20 C.F.R. § 404.1513. The factors for evaluating medical opinions can also be used to evaluate other, non-medical opinions. SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).

The ALJ gave little weight to the opinion of Geil, citing a failure to explain the opinion that plaintiff has postural limitations. Dkt. 10, at 26. Geil opined postural limitations, but only on stooping, kneeling, crouching, and crawling, and did not indicate how frequently plaintiff could perform those functions. Dkt. 10, at 448. Rather, Geil handwrote "limited" next to those functions. Geil's failure to articulate how limited plaintiff is in those functions provides very little useful information for determining RFC. Geil's failure to explain and support her opinions counts against the weight of her MSSP.

The ALJ also determined that Geil opined pulmonary limitations without any associated impairment to support the opinion. Dkt. 10, at 26. A review of the medical evidence in the record, including Geil's treatment notes, reveals that Geil never diagnosed or acknowledged a pulmonary impairment, nor did plaintiff complain of any pulmonary impairment during office visits. The opinion is thus not supported by medical signs, lab results, or an explanation by Geil. The opinion is also inconsistent with the record because no other medical evidence supports a pulmonary limitation. Substantial evidence supports the ALJ's determination that Geil's MSSP deserved little weight.

*B. Credibility of Claimant's Subjective Complaints*

Plaintiff argues that her own complaints should have received greater weight in the RFC determination. A claimant's subjective complaints of debilitating pain are evaluated for credibility under a three-step analysis that asks:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The claimant's daily activities, reported symptom severity, treatment history, treatment side effects, precipitating or aggravating factors, and other functional limitations are compared to the other relevant evidence to determine the credibility of her complaints. 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ will also consider "a claimant's persistent attempts to find relief for her pain and her willingness to try any treatment prescribed," regularity of contact with her doctor, possible psychological disorders that may combine with physical problems, daily activities, and daily dosage and effectiveness of medications. *Keyes-Zachary*, 695 F.3d at 1167. The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies evidence relied on in the credibility analysis. *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

The ALJ found plaintiff's subjective complaints to have little credibility, citing specific inconsistencies with the record and a lack of persistent attempts to find relief for her alleged psychological limitations. Dkt. 10, at 24-25. For example, the ALJ noted that

plaintiff reported limitations due to fluctuating blood sugars, then cited six exhibits indicating plaintiff's erratic blood sugars caused no significant side effects or complications. Dkt. 10, at 25 (referencing Exh. 2F, 6F, 9F, 15F, 17F, and 19F). The ALJ's decision recognizes that plaintiff also reported limiting pain in her shoulders, hip, hands, knees, and wrists with pain and swelling in her hands that causes difficulty grasping or getting dressed, but noted that her Function Report stated that she had no trouble with bending, dressing, bathing, shaving, caring for hair, turning pages to read, using a computer, or driving. Dkt. 10, at 24 (referencing Exh. 10E). The ALJ similarly noted that plaintiff testified that she had limiting side effects from the medication Methotrexate, but that she reported no such side effects from that drug on May 13, 2011. Dkt. 10, at 25 (citing Exh. 15F).

The ALJ dedicated seven paragraphs in his decision to citing instances of inconsistency between the record and plaintiff's subjective complaints, as well as her lack of persistent attempts to find relief for her claimed mental limitations. Dkt. 10, at 24-25. The ALJ sufficiently supported his credibility analysis with substantial evidence on the record and properly granted little weight to plaintiff's subjective complaints.

*C. RFC Support Narrative*

Finally, plaintiff argues that the ALJ failed to support his RFC assessment with sufficient narrative in the decision. Each RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts" and nonmedical evidence relied on by the ALJ. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The narrative must address why the alleged symptom-

15

related limitations are or are not consistent with the objective medical evidence and other evidence. *Id.* The narrative should address the claimant's remaining exertional capabilities, considering each of the seven strength demands separately. *Southard v. Barnhart*, 72 Fed. Appx. 781, 784 (10th Cir. 2003) (citing SSR 96-8p, 1996 WL 374184, at *3-4). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

The ALJ noted that he carefully considered the entire record in determining plaintiff's RFC, then thoroughly discussed the specific medical facts on which he relied and citing the relevant exhibits in the record. Dkt. 10, at 22-24. The ALJ engaged in a thorough and detailed analysis of the weight assigned to the opinions of plaintiff, Dr. Roderick, and Geil. The ALJ also explained in detail why he gave little weight to the opinions of Dr. James P. Cole, Dr. Michael H. Schwartz, and Paul M. Sterling II.  Dkt. 10, at 26-28. The ALJ further explained that the opinion of Dr. Darrel Snyder received significant weight because it is consistent with the record. Dkt. 10, at 27. The narrative spans eight pages, cites specific medical facts relied on, discusses why alleged medical symptoms-related limitations are or are not consistent with the record, and states plaintiff's remaining exertional capacities.[3] The ALJ's narrative in support of his RFC determination is sufficiently detailed.

---

[3] The ALJ's recitation of Plaintiff's remaining exertional limitations addresses all required strength demands and is found in heading five of his report:. Dkt. 10, at 21.

**IT IS THEREFORE ORDERED** this 20th  day of October, 2014, that plaintiff's appeal is hereby **DENIED**.

s/ J. Thomas Marten
J. THOMAS MARTEN, CHIEF JUDGE